CLARENCE E. McMANUS, Judge.
| defendant, Eugene Dix, (Dix), seeks relief from the trial court’s judgment in favor of the plaintiffs, Andrea and Jay Joseph, (the Josephs), in the amount of $18,488.90, plus interest and a proportionate amount of court costs. The trial court also ordered release of $6,000.00; held in the registry of the court, to the Josephs. We affirm and amend the trial court’s judgment.
STATEMENT OF THE CASE
Dix was the owner of two 4-plex apartment buildings located at 4022 and 4024 Hessmer Avenue in Metairie, Louisiana. On March 24, 1999, he entered into a purchase agreement with the Josephs and N.O. Apartments, L.L.C. for the sale of those properties.' Also on that date, two “Property Disclosure Addendums” were executed and made part of the purchase agreements. Those disclosure lists listed no defects for 4022 Hessmer and only one defect for 4024 regarding a dip in the plumbing line.
*1165 On April 6, 1999, A-Pro Home Inspection Service Corporation (A-Pro) performed an inspection of the buildings. A-Pro prepared a list of items that needed to be repaired, with indications of the importance of the repair. For instance, the items labeled with an “x” needed to be repaired immediately, those labeled with a “check mark” needed to be repaired in the next year, and those labeled with a “?” needed to be repaired some time in the future. The Josephs requested that Dix fix all things labeled with an “x”. Lori Mancuso, the real estate agent for both parties, then highlighted the items on the list with color codes. The Josephs added some items to the list that they wanted Dix to repair and highlighted those items in yellow. Dix highlighted the items he agreed to fix in pink and added some additional items he would fix in blue. The Josephs also noted on the list that the problems needed to be repaired in order to obtain the home warranty.
[¡¡Dix signed the April 16, 1999 punch list and agreed to fix some of the defects noted on the original April 6, 1999 list prepared by A-Pro. Dix then prepared his own punch list on April 20, 1999. This list included items he agreed to repair on an apartment by apartment basis.
The Act of Sale took place on May 6, 1999. On that day, A-Pro faxed Authentic Title a document that stated that all of the punch list items had been completed with two exceptions. First, the toilets were still loose. Second, the dip in the sewer line had not been corrected. Both of these defects were listed on the punch list prepared by Dix, as well as the previous punch lists prepared by A-Pro and Lori Mancuso. However, A-Pro did not, reinspect the properties, but made these statements based upon what Dix had represented to them.
The parties discussed these repairs that had not been done and decided to complete the Act of Sale on May 6, 1999. The parties further agreed to put $6,000.00 in escrow with Authentic Title until Dix had completed the repairs. The repairs had to be completed within 30 days.
The work was not completed in 30 days and on June 6, 1999 the Josephs sent a letter to Dix giving him until June 10, 1999 to repair the electrical problems and until June 11,1999 to complete all other repairs. On June 7, 1999, Greater New Orleans Home Services, Inc. (GNO) inspected the property and determined that there were still repairs that were required to be made in order for the properties to qualify for the home warranty coverage. On June 8, 1999, A-Pro agreed with the list of required repairs provided by GNO.
In May 1999, Dix had Charles Moulile, (Moulile), of Pipe Masters, Inc. complete plumbing work on the buildings. First, Moulile worked on the plumbing lines in the front building. Then he was asked to work on the back building. Moulile testified at trial that he unstopped the sewer line with a cable, but he did no pipe work. Moulile further stated he thought he had solved the problem and did not see a problem with the falling or height of the line.
laThereafter, the Josephs had the plumbing repairs completed by A Perfect Plumbing. The owner of A Perfect Plumbing, John Damonte, (Damonte), performed the work, which included installing new sinks in some of the apartments and a new toilet in one apartment. He also repaired the “dip” in the sewer line. He discovered that the entire sewer line had to be replaced in order to pass inspection by Jefferson Parish. The repairs performed by A. Perfect Plumbing totaled $17,500.00. The Josephs also had other repairs done by other plumbing and electrical companies totaling $988.90.
Dix attempted to obtain the $6,000.00 from the escrow account. When the Jo *1166 sephs complained that not all repairs had been completed to their satisfaction, the escrow agent filed a concursus proceeding and put the $6,000.00 into the registry of the court. The Josephs then filed a suit based on redhibition against Dix and A Pro. The Josephs sought reimbursement from Dix for the damages sustained as a result of their reliance on his representation that there were no defects, his agreement of fix the defects which were discovered, and his representation that $6,000.00 would cover the costs. The Josephs sought damages from A-Pro resulting from its negligence and failure to disclose the defects. The concursus proceeding was consolidated with the redhibition action and trial was held on February 2, 2001.
The trial court rendered a Judgment and Reasons for Judgment on September 25, 2001. The trial court found in favor of the Josephs and ordered Dix to pay $18,488.90, with interest and a proportionate amount of court costs. Further, the trial court held that this amount was subject to a credit for the $6,000.00 placed in the registry of the court and ordered the funds to be released to the Josephs. In addition, the trial court found in favor of the Josephs and ordered A-Pro to pay $447.95, plus interest and a proportionate amount of court costs. The trial court also ordered Dix to pay a portion of the Joseph’s reasonable attorney fees to be determined at a subsequent hearing. Dix now appeals the judgment of the trial court alleging three assignments of error: (1) the trial court erred in categorizing the plumbing work done on June 14, 1999, October 21, 1999 and March 14, 2000 and electrical work done oh June 9, 1999 as repair of redhibitory defects; (2) the | ¿trial court erred in finding that the seller should pay a reasonable portion of buyers’ attorney fees; and (8) the trial court erred in failing to award attorney fees to Dix.
DISCUSSION
The Josephs made a claim under redhibition for the defects and problems they encountered with the property they purchased. La. C.C.art. 2520 provides:
The seller warrants the buyer against redhibitory defects, or vices, in the thing sold.
A defect is redhibitory when it renders the thing useless, or its use is so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain recission of the sale.
A defect is redhibitory also when, without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price. The existence of such a defect limits the right of a buyer to a reduction of the price.
The trial court found the plumbing problems encountered by the Josephs, which ultimately required replacement of the entire sewerage line, to be redhibitory defects and awarded the Josephs the repair costs. The trial court also awarded the Josephs the repair costs for electrical work performed to fix electrical outlets that did not work.
We agree with the trial court and find that the plumbing problems were redhibi-tory defects. Before the Act of Sale, A Pro provided a fax stating that all necessary repairs had been made except for the “dip” in the sewer line and loose toilets. The escrow agreement was then entered into by both parties and the $6,000.00 was, placed in- an escrow account. Pursuant to that Agreement, Dix agreed to fix the plumbing problem within 30 days. Dix then hired Moulile of Pipe Masters, Inc., to perform the plumbing work. Moulile did *1167 work on the front building and thereafter returned and unstopped the sewer line of the back budding. At trial, Móulile testified that he thought this work had solved the plumbing problem with the buildings and further, he did not see a problem with the falling or height of the line.
After this work was completed, the Josephs hired Damonte, of A Perfect Plumbing. He installed some new sinks and a toilet in the apartments. He also checked Lon the “dip” in the sewer line. Upon inspection, Damonte found that the sewer line fell the wrong way and the line in the front building was higher than the fine in the back building. In order for the sewer lines to pass inspection by the parish, the entire line had to be replaced. These repairs cost $17,500.00.
The Josephs were unaware of the extent of these plumbing problems at the time of sale. At trial, Mrs. Joseph testified that she would not have purchased the property had she known of all of the problems. Therefore, we find these plumbing problems to be redhibitory defects and further find that the Josephs are entitled to a reduction in the sale price of the property equal to the price of the repairs.
Furthermore, we find that the electrical defects and repairs for which the Josephs are seeking reimbursement are not redhibitory defects, and therefore, the Josephs are not entitled to reimbursement for those costs. The Josephs complained of defects in the electrical outlets of some apartments. These problems could have been readily discovered by the Josephs themselves, or by A-Pro during their inspection. These problems are also easily discovered by a simple walk-through inspection. The Josephs and A-Pro both walked through the apartment buildings. Therefore, these defects were discoverable and are not redhibitory.
We also find that the Josephs are entitled to the $6,000.00 held in the registry of. the court. Dix entered into an agreement in which he would fix the outstanding repairs within 30 days of the act of sale, or the $6,000.00 would go to the Josephs, to be used to pay for the repairs. Dix hired a plumber to complete the repairs, but ultimately the problems were not repaired. Therefore, according to their agreement, the Josephs are entitled to the $6,000.00 held in the registry of the court to cover some of the expenses of fixing the plumbing lines.
Based on the above, we affirm and amend the judgment of the trial court and award the Josephs $18,323.90, the costs of the plumbing repairs, plus interest, court costs and reasonable attorney fees. Furr ther, we affirm the trial court’s order releasing to the Josephs the $6,000.00 held in the registry of the court.
AFFIRMED AS AMENDED.